IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                                                  No. 08 CR 2648 MV

JUSTIN HECKARD,

    Defendant.

**MEMORANDUM OPINION AND ORDER**

    **THIS MATTER** came before the Court on Defendant's Motion to Suppress Physical Evidence and Statements (Doc. 26) filed February 9, 2009, as amended thereafter by Defendant's Amended Motion to Suppress Physical Evidence and Statements (Doc. 33) filed April 13, 2009. The Court conducted a hearing on the motion on April 14, 2009. After considering the motion, response, briefs, relevant law, evidence and arguments, and being otherwise fully advised of the premises, the Court finds the motion should be **DENIED** for the reasons stated herein.

**STATEMENT OF THE ISSUE**

    In his motion, Defendant moves to suppress "from use at trial any physical evidence seized from him or the vehicle he was driving as a result of his illegal detention and seizure on or about December 26, 2007, in Hobbs, New Mexico by the Hobbs Police Department and all subsequent statements made by the Defendant and all testimony of members of the Hobbs Police Department or their agents in regard to the illegal seizure of Defendant or any items illegally seized and such statements." (Doc. 33, p. 1.) Subsequently, during the hearing on this matter defense counsel advised the Court that Defendant is no longer seeking to suppress the "recorded

statements of Mr. Heckard or the recorded statements of. . . Reginald Brown." Tr. at 144.
Therefore, the issue presently before the Court is suppression of the weapons and ammunition seized from Defendant's vehicle following the traffic stop on December 26, 2007. Tr. at 145.

## FACTUAL BACKGROUND

On December 25, 2007, Defendant and his family had a Christmas party at Defendant's home where he lived with his mother. The party was interrupted when an individual allegedly threatened to "shoot up" Defendant's house. Tr. at 19. The party abruptly ended and Defendant and some other members of his family went to the International House of Pancakes ("IHOP") for a late-night meal. Tr. at 19. After leaving IHOP, Defendant, driving his mother's gray Ford Expedition, dropped off several members of his family at his sister's house shortly before 4:00 a.m. Tr. at 11, 15-16. He then drove by himself to Dunn Street to see his friend, Chuck Green. Tr. at 16. According to Defendant, he parked his vehicle on the right side of the road facing Willow Street approximately three to four feet from the stop sign. Tr. at 15-17. He got out of his car and talked to his friend, Chuck, for about three minutes outside of Chuck's home. Tr. at 19. Defendant's mother then called him and told him to come home, so he left. Tr. at 19.

Defendant said he got in his vehicle, pulled away from the curb, stopped at the intersection, "looked both ways" and then "took off" turning right on Willow Street. Tr at. 21. Defendant said he is sure he stopped at the stop sign "[b]ecause the police always be right in that neighborhood. That's how I know for sure I stopped at that stop sign." Tr. at 22. He also said when he initially got in the vehicle, he did not realize his cousin, Reginald Brown, had gotten into the front passenger seat while he was at Chuck's house. Tr. at 19. Defendant said he first saw his cousin when he turned from Dunn Street onto Willow Street. Tr. at 19-20.

Defendant's uncle, Kenneth Heckard, had been with Defendant and his family at IHOP that night. Tr. at 62. He followed Defendant home in a separate car to make sure he made it home safely. Tr. at 62, 65. He said he parked his car behind Defendant's vehicle when he stopped at Chuck's house on Dunn Street. Tr. at 63. Kenneth then went to his mother's house, which is across the street from Chuck's house, to use the bathroom while Defendant talked with Chuck. Tr. at 64. Kenneth said when he came back out, he got back into his car. Tr. at 65. Shortly thereafter, he saw Defendant get in his car and they both left. Tr. at 65. Kenneth did not see Reginald Brown get into Defendant's car. Tr. at 79-80. As they were leaving, Kenneth says he saw Defendant stop at the stop sign. Tr. at 66. He testified that he knows Defendant stopped because he himself had to stop behind Defendant. Tr. at 80.

Defendant drove approximately one mile (6-7 blocks) after turning on Willow Street before Officer Kyle Wilkison turned on his lights and pulled him over just before Defendant reached the intersection of Eighth Street and Main Street. Tr. at 22-26; Def. Ex. 2. Before stopping Defendant, Officer Wilkison said he had been traveling south on Willow Street. He pulled his patrol vehicle over at the corner of Willow Street and Dunn Street after observing two cars parked near the curb at the corner of Dunn Street with their headlights illuminated. Tr. at 99. He said almost immediately after he stopped, he observed the vehicles leave. Tr. at 99. Officer Wilkison testified that the first vehicle, driven by Defendant, "does not stop for the stop sign. It proceeds and makes a right-hand turn" onto Willow Street. Tr. at 100. He said the second vehicle, driven by Defendant's uncle, stopped at the stop sign. Tr. at 100. After observing the vehicles leave, Officer Wilkison said he "left [his] position," waited for the second vehicle to clear and then "went after those vehicles." Tr. at 100.

Officer Wilkison followed both vehicles without his headlights or emergency lights illuminated for at least three blocks, at which time the second vehicle turned right on Childers or Dunham Street. Tr. at 100; *see also* Tr. at 81. Officer Wilkison said he turned his headlights on after the second vehicle turned, and then illuminated his overhead emergency lights to pull over Defendant a couple blocks later at the corner of Eighth Street and Marland Street. Tr. at 101. Defendant testified Officer Wilkison did not turn any of his lights on until approximately one to two blocks before he reached Main Street where he was stopped. Tr. at 25. Kenneth Heckard also testified that Officer Wilkison did not have any lights on initially, and did not turn them on until sometime after Kenneth turned off of Willow Street. Tr. at 81-82.

When Defendant stopped his car, he and his cousin both got out and ran from the vehicle. Tr. at 27. Defendant said the reason he ran was because he did not have a license. Tr. at 27. He said his cousin told him later that the reason he ran was because he thought he had a warrant. Tr. at 27, 53. Defendant was apprehended by another officer a few blocks away. Tr. at 27. Officer Wilkison initially chased Defendant, but stopped and returned to Defendant's vehicle. Tr. at 110. When he arrived at the vehicle, he saw the "two [front] doors standing open" and, while standing outside near the driver's side door, he saw "several guns inside the vehicle." Tr. at 111-12. Officer Wilkison initially saw a Kel Tec and a revolver between the console and the driver's side seat. Tr. at 112. While still standing on the driver's side of the vehicle, Officer Wilkison said he could see other weapons on the passenger side, two of which were on the floorboard. Tr. at 114.

Officer Wilkison went over to the passenger side and saw two guns located between the console and the passenger seat, a .45 caliber Springfield and a 9 mm Glock. Tr. at 115. The

weapons on the floorboard were a machine gun and a 12 gauge shotgun. Tr. at 117, 119. All six of the firearms found in the vehicle were loaded. Tr. at 114-19. Subsequently it was determined that the revolver was stolen while the other firearms, excluding the illegal machine gun, were registered to Defendant. Tr. at 113. After seeing the weapons in plain view, Officer Wilkison conducted an inventory of the vehicle before having it towed. Tr. at 123. In the center console, he found a bag containing ammunition for several of the weapons in the vehicle. Tr. at 123-126.

Once Defendant was apprehended, he was placed under arrest and taken to the police station. According to Officer Wilkison, he was arrested for "[c]oncealing self-owned private property, resisting and evading and obstructing and failure to stop at a stop sign." Tr. at 119. Officer Wilkison wrote Defendant a citation for failure to stop and delivered it to the jail where it was placed with Defendant's personal property. Tr. at 120; Gov. Ex. 9. Later than day on December 26, 2007, Defendant appeared in municipal court concerning the citation, pled guilty to the offense and paid a fine of $10.00 for the citation. Tr. at 121; Gov. Ex. 10. Defendant claims he did not plead guilty to the traffic offense, but only appeared on the evading and eluding charge, for which he paid a larger fine. Tr. at 38. He said the municipal judge only sentenced him concerning the evading and eluding charge and informed him that if he did not get into any additional trouble for a year, he would not bring it back up. Tr. at 38-39.

Before this incident, Defendant testified that he had been stopped by the Hobbs Police Department "[a]bout 50 times or more" and by Officer Wilkison "about 30 [times] or more" since 2001. Tr. at 13, 30, 32. In 2001, Defendant's family won a lawsuit against the Hobbs Police Department and was awarded $350,000 for police misconduct. Tr. at 12. Defendant indicates that since that time, he has been repeatedly stopped by the Hobbs Police, often without

cause, suggestive of harassment or retaliation for the lawsuit.  Defendant says none of these stops have resulted in his arrest.  He has either received citations or warnings, primarily for not having a driver's license or wearing a seat belt.  Tr. at 30.  Defendant explained that during these stops he had a "provisional" license which required him to have someone "21 or older, with a license" driving with him.  Tr. at 30.  He also said a "couple times they stopped me, I wasn't doing nothing, just driving and they turned around and stopped me."  Tr. at 31.  Additionally, Defendant said he has been stopped several times before with firearms in his car.  Tr. at 58.  He said he was not arrested for the firearms because they were lawfully registered to him.  Tr. at 58.

Contrary to Defendant's testimony, Officer Wilkison said he has only stopped Defendant two or three times in the past that he recalled.  Tr. at 106, 111.  However, he admitted he recognized Defendant's vehicle and remembered that Defendant had firearms in his vehicle at the time of those stops, which were lawfully registered to him.  Tr. at 106, 111.

## ANALYSIS

"[A] traffic stop is valid under the Fourth Amendment if the stop is based on an observed traffic violation or if the police officer has reasonable articulable suspicion that a traffic or equipment violation has occurred or is occurring."  *United States v. Botero-Ospina*, 71 F.3d 783, 787 (10th Cir. 1995); *see also United States v. Vercher*, 358 F.3d 1257, 1261 (10th Cir. 2004).  An officer's motivation for conducting a stop is irrelevant to the Court's determination of the reasonableness of the stop.  *See Whren v. United States,* 517 U.S. 806, 813, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996); *see also Botero-Ospina*, 71 F.3d at 787.  The "plain view" doctrine applies to traffic stops. Therefore, an officer can properly seize evidence of a crime in a vehicle without a warrant if: "'(1) the officer was lawfully in a position from which to view the object seized in

plain view; (2) the object's incriminating character was immediately apparent - i.e., the officer had probable cause to believe the object was contraband or evidence of a crime; and (3) the officer had a lawful right of access to the object itself.'" *United States v. Carey*, 172 F.3d 1268, 1272 (10th Cir. 1999) (quoting *United States v. Soussi*, 29 F.3d 565, 570 (10th Cir. 1994)); *see United States v. Hensley*, 469 U.S. 221, 235, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985) (concluding that, during the course of a lawful stop, police are entitled to seize evidence revealed in plain view in the course of the stop).

     In this case, the motion before the Court turns on whether or not Defendant stopped at the stop sign on Dunn Street as no other justification for the stop was given by the government or Officer Wilkison. This determination depends on the evidence submitted at the hearing, which includes the testimony of Defendant, Kenneth Heckard and Officer Wilkison, the traffic citation (Gov. Ex. 9) and a municipal court record (Gov. Ex. 10). After considering the evidence and the credibility of the witnesses, the Court finds Defendant failed to stop at the stop sign on Dunn Street, and thus Officer Wilkison lawfully observed and seized the firearms and ammunition in Defendant's vehicle. This determination is made by a very narrow margin as the Court finds neither Defendant nor Officer Wilkison entirely credible.

     The Court finds Defendant is prone to exaggeration with respect to the number of times he has been stopped previously (50 times), including by Officer Wilkison (30 times); although the Court believes it is far in excess of the two or three times Officer Wilkison indicated. The Court finds credible Defendant's explanation that police officers regularly patrol the area around Dunn Street, and thus he is more likely to be cautious about obeying traffic laws in that area. However, when questioned about the reason he fled from his car upon being stopped,

Defendant's explanation that he ran because he did not have a valid driver's license is incredible. According to Defendant, the majority of his prior stops have been for failure to have a valid license or to wear a seat belt. Defendant casually admitted that on each of these previous occasions, he would either receive a citation or a warning regarding the violation and then be on his way. It does not make sense that on this particular occasion, he would flee his vehicle for not having a valid license, when he did not do so on any other occasion in the past. Therefore, Defendant's explanation for why he ran from the vehicle casts doubt on the credibility of his testimony. The Court also finds Defendant's assertion that he was not aware initially that his cousin had gotten into his vehicle with the illegal firearms somewhat suspect. While possible, it seems implausible that Defendant did not readily notice his cousin sitting next to him in the passenger seat or the illegal firearms he allegedly brought with him, especially the machine gun which was fairly large and not concealed.

      The Court finds Officer Wilkison's behavior questionable. The fact that he essentially laid in wait on Willow Street for Defendant to leave, and then followed him in the dark without any lights illuminated on his vehicle for approximately one mile before pulling him over for failing to stop at a stop sign casts doubt on whether the traffic violation actually occurred. The officer's behavior suggests he followed Defendant to see if he would do something wrong rather than actually having already witnessed a traffic violation. Officer Wilkison gave no valid reason for waiting so long to stop Defendant, thereby undermining his credibility regarding the stop. Additionally, the Court does not find Officer Wilkison's testimony regarding his prior limited contact with Defendant credible. Officer Wilkison claims he only stopped Defendant two or three times previously. However, he also testified that he knew Defendant by sight, recognized

his vehicle as belonging to Defendant and recalled Defendant having weapons in the vehicle during the previous stops.  Officer Wilkison's knowledge about Defendant is indicative of him having had more contact with Defendant than he stated.

The Court finds Defendant's uncle, Kenneth Heckard, credible.  His demeanor and answers to questions appeared open and honest, without volunteering or providing information that he would not likely have known.  His testimony was fairly consistent with Defendant and Officer Wilkison regarding the period following the alleged traffic violation.  Furthermore, Kenneth readily admitted when he did not know facts that may have been helpful to Defendant, such as seeing Reginald Brown get into Defendant's vehicle.  Kenneth testified that Defendant stopped at the stop sign on Dunn Street before proceeding onto Willow Street because Kenneth recalls that he had to stop behind him.  The Court believes this is Kenneth's recollection of the stop.

However, the Court weighs Kenneth's recollection of the events approximately a year and a half after the incident against the fact that Defendant pled no contest and was found guilty of failing to stop at the stop sign less than 24 hours after the incident occurred.  *See* Gov. Exs. 9 & 10.  Although Defendant now claims he did not plead guilty or no contest to running the stop sign, the Court has no reason to disbelieve the municipal court records and finds it unlikely that the municipal court judge entered a finding of guilt regarding the traffic violation without advising Defendant of the charge against him.  *See* Gov. Exs. 9 & 10.  The Court finds the fact that Defendant pled no contest to the traffic violation less than a day after the incident, with no apparent understanding of the consequences such a plea could have on the present offense, supports a finding that he committed the traffic offense.  Consequently, the Court finds Officer

9

Wilkison lawfully stopped Defendant after observing a traffic violation and was in a lawful position to observe and seize the firearms in plain view. *See Carey*, 172 F.3d at 1272; *Botero-Ospina*, 71 F.3d at 787. Furthermore, Officer Wilkison lawfully seized the ammunition in the vehicle pursuant to an inventory of the vehicle after Defendant abandoned it on the side of the road. *See Colorado v. Bertine*, 479 U.S. 367, 370-72, 107 S.Ct. 738, 93 L.Ed.2d 739 (1987) (citations omitted) (officer lawfully conducted inventory of abandoned vehicle impounded by police). Additionally, Officer Wilkison had authority to conduct a warrantless search of the vehicle based upon the fair probability that it contained contraband or evidence after he observed two illegal firearms and four others in the vehicle. *See United States v. Nielsen*, 9 F.3d 1487, 1489-90 (10th Cir. 1993) (quoting *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)).

**IT IS THEREFORE ORDERED** that Defendant's Amended Motion to Suppress Physical Evidence and Statements (Doc. 33) is **DENIED**.

DATED: August 4, 2009.

_____
MARTHA VAZQUEZ
U.S. DISTRICT COURT JUDGE